Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7629 | **DATE** | 3/29/2004 |
| **CASE TITLE** | | BANOS, ET AL vs. CHICAGO | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due ___.
(3) ☐ Answer brief to motion due___. Reply to answer brief due___.
(4) ☐ Ruling/Hearing on ___ set for ___ at ___.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ___ set for ___ at ___.
(7) ☐ Trial[set for/re-set for] on ___ at ___.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ___ at ___.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Plaintiff's motion (42-1) to waive local rule (56)(b)(3) is granted. Motion (42-2) for leave to withdraw abandonment of test validation claims is denied. Motion (31-1) for summary judgment is granted. Enter memorandum opinion and order.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | 46 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

PAUL BANOS, et al.,

    Plaintiffs,

v.

CITY OF CHICAGO,

    Defendant.

No. 98 C 7629
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

This is a Title VII disparate impact challenge to the 1998 Chicago Police Lieutenant Examination and promotion process. The examination was designed to promote sergeants to the rank of lieutenant, and consisted of three parts: a pass-fail Written Qualifying Test ("WQT"), a rank order Assessment Exercise ("AE") for at least 70 percent of all promotions, and a merit selection process ("MSP") for up to 30 percent of all promotions.

Plaintiffs' complaint was filed on November 27, 1998, and amended in August 2000. After a group of minority police sergeants challenging the City's 1994 lieutenant promotion exhausted their appeals in *Bryant v. City of Chicago*, 200 F.3d 1092 (7th Cir. 2000), plaintiffs conceded that the 1998 lieutenant examination was content valid, job-related and consistent with business necessity. Accordingly, they amended their complaint in November 2000 to allege that merit promotions were less discriminatory than and equally valid to rank order promotions, and asserted that the City violated Title VII by choosing to limit merit promotions to thirty percent of all promotions.



In January 2001, plaintiffs served their Revised Response to Second Set of Interrogatories and Admissions Based on Conditional Amended Complaint. In that Response, plaintiffs admitted that:

(1) The WQT of the 1998 lieutenant examination is job-related, consistent with business necessity, and content valid;

(2) The passing score on the WQT of the 1998 lieutenant examination conforms to and does not violate any professional standards of industrial psychology, conforms to and does not violate the Uniform Guidelines on Employee Selection Procedures, and does not violate or contribute to any violation of Title VII;

(3) The Written Component of the AE of the 1998 lieutenant examination is job-related, consistent with business necessity, and content valid and does not violate or contribute to a violation of Title VII;

(4) The City's use of the results of the Written Component of the AE of the 1998 lieutenant examination does not violate or contribute to a violation of Title VII;

(5) The Oral Component of the AE of the 1998 lieutenant examination is content valid and does not violate or contribute to any violation of Title VII;

(6) The City's use of the results of the Oral Component of the AE of the 1998 lieutenant examination does not violate or contribute to a violation of Title VII; and

(7) The City's use of the results of the AE component of the 1998 lieutenant examination does not violate or contribute to any violation of Title VII.

Consistent with their pleadings and discovery responses, plaintiffs repeatedly conceded the validity of the 1998 lieutenant examination in open court.[1]

On February 22, 2001, I informed plaintiffs that they would need the testimony of an expert to satisfy their evidentiary burdens on their Title VII disparate impact claim. Despite this

---

[1] According to plaintiffs' counsel, plaintiffs "are not going to be litigating test validity." Plaintiffs' counsel later confirmed, "[i]f the Supreme Court says cert is denied [in *Bryant*] then we will have to focus squarely on the merit promotion issue." The Supreme Court denied certiorari on October 2, 2000. *Bryant v. City of Chicago*, 531 U.S. 821 (2000).

2

instruction, plaintiffs failed to designate an expert or submit an expert report before the close of discovery in August 2002.

Based on plaintiffs' concessions in written discovery, their decision not to present an expert in support of their claim, and their failure to present any evidence regarding the existence of another available method for promotion to lieutenant that was equally valid to and less discriminatory than the 1998 promotional process, the City moved for summary judgment on November 1, 2002. By that date, the City already had successfully moved for summary judgment in *Allen v. City of Chicago*, No. 98 C 7673, 2002 U.S. Dist. LEXIS 18973 (N.D. Ill. Sept. 30, 2002), a nearly identical case involving a challenge by minority police officers to the City's 1998 sergeant promotion process. Plaintiffs here asked me to stay summary judgment proceedings pending disposition of the appeal in the *Allen* matter because "it is likely that the entry of judgment in favor of defendant will be required in this case" if the Seventh Circuit affirmed the *Allen* decision on any grounds. I therefore stayed briefing on the summary judgment motion.

On December 9, 2003, the Seventh Circuit affirmed the district court's decision to grant summary judgment in *Allen*. The Court found that the plaintiffs failed to specify any alternative to the 1998 sergeant promotion process, to prove that the alternative was equally valid, or to prove that the alternative was less discriminatory. *Allen v. City of Chicago*, 351 F.3d 306, 316-17 (7th Cir. 2003). Plaintiffs here have since conceded that this decision is fatal to any "equally valid, less discriminatory alternative" in this case.

This case has been pending before me for nearly six years, but Plaintiffs now want the opportunity to challenge, for the first time, the validity and job-relatedness of the 1998 promotion examination. Accordingly, plaintiffs move to withdraw their abandonment of test validation

3

claims. They argue that they should be able to do so because of a purported conflict between *Allen, Bryant,* and *Petit v. City of Chicago,* 352 F.3d 1111 (7th Cir. 2003). The City argues that contrary to plaintiffs' contention, there has been no shift in the law and that withdrawal is therefore unjustified. In addition, the City argues that abandonment at this late date is prejudicial and should not be allowed. In the event that their motion to withdraw their abandonment of test validation claims is denied, plaintiffs essentially concede that summary judgment in favor of the City is appropriate. Accordingly, this motion is addressed at the end of this decision.

## Plaintiffs' Motion to Withdraw Abandonment of Test Validation Claims

Under Federal Rule of Civil Procedure 36(b), any matter admitted is "conclusively established." The purpose of this rule is to narrow the issues that are contested and that need to be resolved at trial and to eliminate those issues that are not in dispute. *United States v. Kasuboski,* 834 F.2d 1345, 1350 (7th Cir. 1987). If parties "cannot depend on the binding effect of admissions obtained under [Rule 36], they cannot safely avoid the time, effort and expense of preparing proof of the matters of which they have secured admission and the purpose of the rule is frustrated." *Tidwell v. Daley,* No. 00 C 1646, 2001 U.S. Dist. LEXIS 18491, *3 (N.D. Ill. Nov. 8, 2001). Likewise, courts rely on those admissions to ensure cases are resolved efficiently and to control their dockets. *In re Narowetz Mech. Contractors, Inc.,* 99 B.R. 850, 860-61 (Bankr. N.D. Ill. 1989), *aff'd,* 898 F.2d 1306 (7th Cir. 1990); *O'Neill v. Medad,* 166 F.R.D. 19, 22 (E.D. Mich. 1996). Consequently, I should be reluctant in permitting withdrawal of an admission. *Id.* at 22.

4

I may permit plaintiffs to withdraw or amend an admission made pursuant to Rule 36 only if: (1) the presentation of the merits will be furthered by allowing withdrawal or amendment; and (2) the party that obtained the admission will not be prejudiced. *Narowetz*, 99 B.R. at 860. Thus, I have discretion whether to permit or deny withdrawal of admissions. *Id.* at 860-61. Even if I find that both the merits and prejudice factors favor the party seeking withdrawal, I may refuse to allow withdrawal of an admission. *Id.* at 860. Here, I exercise my discretion to prohibit withdrawal of plaintiffs' abandonment of the test validation claims because contrary to plaintiffs' contention, there has been no shift in the law justifying such withdrawal and because allowing withdrawal at this point would prejudice the city.

First, there has been no change to the standard for determining whether an employer's selection device is job-related and consistent with business necessity. In order to establish a prima facie case of Title VII disparate impact, plaintiffs must show that a specific employment practice, while neutral on its face, has had a significant discriminatory impact. *Price v. City of Chicago*, 251 F.3d 656, 659 (7th Cir. 2001); *Bryant*, 200 F.3d at 1094. If plaintiffs make this required initial showing, the burden shifts to defendant to prove "the challenged practice is job-related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A); Price, 251 F.3d at 659; *Bryant*, 200 F.3d at 1094. After this showing is made, plaintiffs can prevail only if they prove that an equally valid, less discriminatory method is available and that defendant refuses to adopt that alternative. *Id.*; see 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

Employers may establish that their selection processes are job-related with "criterion-related validity studies, content validity studies or construct validity studies." *Uniform*

5

*Guidelines on Employee Selection Procedures*, 29 C.F.R. § 1607.5 (2003); *see also Adams v. City of Chicago*, No. 94 C 5727, 1996 U.S. Dist. LEXIS 3567, *41 (N.D. Ill. Mar. 25, 1996) (1994 Chicago police sergeant examination determined to be job-related through a content validity study). No one validation method is preferred. *Billish v. City of Chicago*, 989 F.2d 890, 896 (7th Cir. 1993); *Gillespie v. Wisconsin*, 771 F.2d 1035, 1040-41 (7th Cir. 1985). One may choose a validation method based upon the inference that is sought. *Id.* at 1040.

In *Bryant*, the Seventh Circuit addressed the issue of whether the 1994 lieutenant examination was job-related. Consistent with *Gillespie*, the Court held that an employer may use any one of three validation methods: (1) content, (2) construct, or (3) criterion related, to establish that a test is job-related. *Bryant*, 200 F.3d at 1094. The *Bryant* plaintiffs contended that the City did not meet its burden of proving that the examination was content valid, but the Court rejected that contention. *Id.* A test is content valid so long as it "measure[s] a significant portion of the knowledge, skills, and abilities necessary for" the job. *Id.* at 1099. The 1994 lieutenant examination met that standard because it was prepared by a professional testing developer and was based on a detailed job analysis, interviews with incumbent lieutenants, observations of lieutenants at work, reviews of applicable police documents, reports and orders, and a master job description which measured the importance and frequency of a lieutenant's tasks and responsibilities. *Id.* In affirming the content validity of the exam, the Seventh Circuit also noted the "knowledge, expertise, and experience of those involved in the test development . . . the preliminary use of peer review and pilot testing of each of its three parts." *Bryant*, 200 F.3d

at 1099. Accordingly, the Court concluded that the City had "made a substantial showing of job relatedness." *Id.*[2]

In *Allen*, two sub-classes of minority Chicago police officers claimed that sergeant promotions in the 1998 examination process had an unlawful disparate impact on minorities in violation of Title VII. The district court granted the City's motion for summary judgment. *Allen*, 2002 U.S. Dist. LEXIS 18973. The only issue in that case was whether a higher percentage of promotions based on merit selection than the 30 percent the City was using was substantially equally valid and less discriminatory. The plaintiffs appealed, but the Seventh Circuit affirmed. First, the Court found that the plaintiffs failed to produce "any evidence that the officers' alternative of increasing merit promotions would lead to a workforce substantially equally qualified." *Allen*, 351 F.3d at 314. Second, the Court found that the plaintiffs failed to establish that increased merit promotions would have been less discriminatory. The plaintiffs had argued that previous merit-based promotions did not have a disparate impact on minorities, but the Court rejected that argument finding that "[p]ast success at lower levels of merit-based promotions merely predicts, but does not establish, success at higher levels of merit-based promotions. We cannot require the City to increase its merit-based promotions on mere speculation." *Id.* at 315.

---

[2] The *Bryant* plaintiffs also challenged the City's use of the examination scores to make promotions in rank order. Following *Gillespie*, the *Bryant* court observed that rank order promotions can be validated by a substantial showing that (1) the test is job-related and representative, and (2) the test achieved an adequate degree of reliability. 200 F.3d at 1099 (citations omitted). The Seventh Circuit found that the City satisfied both prongs of the test. As discussed above, the examination was shown to be content valid and job-related. *Id.* Apart from job-relatedness, the City also established the reliability of the examination. *Id.* For example, the test developer had used a number of methods, including pre-testing, to ensure reliability of the exam. *Id.* As a result, the Court held that use of rank-ordering was valid under Title VII. *Bryant*, 200 F.3d at 1100. Plaintiffs' contention that the court confused reliability with validity failed to convince the court to rehear the appeal.

Plaintiffs here claim that *Allen* requires a stricter standard for an employer to establish that a selection device is job-related than the one set forth in *Bryant*, but they are incorrect. The *Allen* plaintiffs agreed prior to the City's summary judgment motion that the 1998 sergeant test was job-related and consistent with business necessity. *Id.* at 312. "As a result, questions as to the job relatedness and business necessity of the promotional process components were not raised [at the district court] and [were] waived on appeal." *Id.* at 312 n. 8. The Court plainly did not reach the issue of whether the examination was job-related and, thus, there was no sharp shift in the law. Rather, the Court affirmed summary judgment because plaintiffs made no attempt to produce evidence that any alternative mechanism was equally valid to or less discriminatory than the process used by the City. *Allen*, 351 F.3d at 314.

Plaintiffs also claim that *Petit v. City of Chicago* requires a stricter standard for an employer to establish that a selection device is job-related than the one set forth in *Bryant*. However, *Petit* was not a disparate impact case. In *Petit*, the plaintiffs claimed that affirmative action promotions made based on the results of the 1985-1988 police sergeant examination deprived them of their equal protection rights. 352 F.3d at 1112. The Seventh Circuit affirmed the district court's grant of summary judgment to the City, finding that the challenged affirmative action promotions served a compelling government interest and were narrowly tailored. *Id.* at 1115, 1117. But *Petit* is totally unrelated to the disparate impact standards in *Bryant*, *Allen* and this case. In the end, the issue of job relatedness under Title VII was not presented to or addressed by the courts in *Allen* or *Petit*. Neither addresses, much less overturns, *Bryant*. Therefore, there is no justification for allowing a complete change of theory at this point.

8

Moreover, the City would be severely prejudiced if plaintiffs were permitted to withdraw their admissions at this point. Given the abandonment of test validation claims, the City prepared its defense tailored to the narrow issue of whether making more than 30 percent of lieutenant promotions in 1998 using a merit-based system was substantially equally valid and less discriminatory than the system in place. Discovery has now been completed for nearly 20 months. *See Tidwell*, 2001 U.S. Dist. LEXIS 18491, *3 (whether discovery has closed is a factor to consider in determining prejudice). In addition, the discovery that occurred was tailored to the only issue present in the suit. Should plaintiffs' motion be granted, discovery will need to be reopened (and essentially begin anew) for additional rounds of written, oral, and expert discovery. Such discovery would be substantial, not minimal. Furthermore, the City has already moved for summary judgment based on plaintiffs' admissions, and courts have found prejudice where the party has moved for summary judgment based on admissions prior to the time a motion to withdraw those admissions had been filed. *Narowetz*, 99 B.R. at 860-61. Finally, this case has been pending for almost six years, due in large part to plaintiffs' numerous requests for extensions of discovery deadlines and stays of all proceedings while the *Bryant* and *Allen* cases worked their way through the district and appellate courts. The City is entitled to a prompt resolution of this lawsuit from this point onward, but reinstating an issue that plaintiffs have already withdrawn will only serve to delay resolution of a police promotional process from the last century. *Id.*; *O'Neill*, 166 F.R.D. at 21-22. It is difficult to see how public interests might be served by hearing a challenge to a lieutenant's examination and assessment exercise first made more than five years after they were administered.

## City's Motion for Summary Judgment

Plaintiffs recognize that any challenge to the job relatedness of the written test in this case would fail under the legal standard applied by the Seventh Circuit in *Bryant*. Accordingly, plaintiffs limited their claims to the "equally valid, less discriminatory alternative" of 42 U.S.C. § 2000e-2(k)ii. In *Allen*, however, the Seventh Circuit rejected the argument that increasing the percentage of merit promotions was an equally valid, less discriminatory alternative. The *Allen* plaintiffs advanced the same arguments that are at issue here, and *Allen* is fatal to any "equally valid, less discriminatory alternative" argument in this case. Therefore, having denied the plaintiffs' motion to withdraw their abandonment of test validation claims, I grant summary judgment in favor of the City.

For the reasons above, Plaintiffs' Motion to Waive Local Rule 56(b)(3) is GRANTED, their Motion for Leave to Withdraw Abandonment of Test Validation Claims is DENIED, and the City's Motion for Summary Judgment is GRANTED.

ENTER:

James B. Zagel
United States District Judge

DATE: MAR 29 2004

10